THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANTHONY R.W.,[1]
    Plaintiff,

        v.                                        Civil No. 3:21-cv-323 (DJN)

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's application for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). Plaintiff was fifty-two years old at the time of his benefits application and previously worked as a machinist at a polyester film manufacturing company. (R. at 47-48, 222.) Plaintiff alleges he is unable to work due to bilateral knee pain. (R. at 131.)

On November 24, 2020, an Administrative Law Judge ("ALJ") partially denied Plaintiff's application for benefits. (R. at 12-15.) After exhausting his administrative remedies, Plaintiff seeks review of the ALJ's decision. This matter now comes before the Court for a Report and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

Having reviewed the parties' submissions and the record in this case, and for the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 27) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 29) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on November 8, 2018, alleging disability beginning April 9, 2018. (R. at 222.) The SSA initially denied Plaintiff's claims on January 29, 2019, and again upon reconsideration on June 28, 2019. (R. at 158, 165.) Plaintiff requested a hearing before an ALJ, which was held on November 10, 2020, at which Plaintiff appeared with counsel. (R. at 33-72.) On November 24, 2020, the ALJ found that Plaintiff was not disabled prior to November 19, 2020 (the date Plaintiff changed age categories). (R. at 26.) However, the ALJ further found that Plaintiff became disabled on November 19, 2020, and continued to be disabled through the date of the ALJ's decision. (R. at 26.) Subsequently, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-3, 12.) Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to partially deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment

3

listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 16-26.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date.[3] (R. at 18.) At step two, the ALJ found that since April 9, 2018, Plaintiff had the following severe impairments: bilateral

---

[3] Substantial gainful activity is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

osteoarthritis of the knees, "status post left and right total knee replacement, and history of left knee fracture." (R. at 18.) The ALJ concluded at step three that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in the regulations. (R. at 19.) Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity[4] and found that Plaintiff could perform light work, as defined in 20 CFR § 404.1567(b), with the following exceptions:

> [H]e could lift and carry 20 pounds occasionally and 10 pounds frequently. He could stand and/or walk for four hours, and sit for six hours in an eight-hour workday. He could frequently push and pull with the lower extremities bilaterally. He could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel, crouch, and crawl. He could tolerate occasional exposure to extreme cold, unprotected heights, or moving mechanical parts. He could occasionally operate foot controls with the lower extremities bilaterally.

(R. at 19.)

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work since April 9, 2018. (R. at 24.) At step five, the ALJ found that prior to November 19, 2020, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 24-25.) In making his findings, the ALJ considered the testimony of a vocational expert, who opined that given Plaintiff's age, education, work experience, and residual functional

---

[4] Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

capacity, he would have been able to perform the requirements of representative occupations in the national economy, such as final inspector, stuffer, and final assembler. (R. at 25-26.) Accordingly, the ALJ concluded that Plaintiff was not disabled prior to November 19, 2020, but became disabled on that date and continued to be disabled through the date of the ALJ's decision. (R. at 26.)

## IV. ANALYSIS

Plaintiff argues two issues necessitate: (1) remand; or (2) granting a calculation of benefits. (Pl.'s Mem. at 1, 14.) First, Plaintiff asserts that the ALJ erred by failing to "properly evaluate Plaintiff's subjective complaints." (Pl.'s Mem. Supp. Summ. J. 1, 9, (ECF No. 28) ("Pl.'s Mem.").) Second, Plaintiff contends that the ALJ failed to "properly evaluate the medical necessity of Plaintiff's cane use." (Pl.'s Mem. at 1, 15.) In response, Defendant argues that the ALJ: (1) properly considered Plaintiff's subjective allegations in accordance with the regulations; and (2) sufficiently evaluated Plaintiff's alleged use of a cane and explained why he did not include it in the residual functional capacity determination. (Def.'s Mot. Summ. J. 12, 19-20 (ECF No. 29.) ("Def.'s Mem."). For the reasons set forth below, the Court finds that the ALJ did not err, and substantial evidence supports his findings.

**A. The ALJ Did Not Err When Evaluating Plaintiff's Subjective Complaints.**

Plaintiff first argues that the ALJ's decision is not supported by substantial evidence because the ALJ: (1) erroneously evaluated Plaintiff's subjective complaints; and (2) offered only a "conclusory assertion that Plaintiff was able to 'perform normal activities of daily living.'" (Pl.'s Mem. at 9-14.) Defendant counters that the ALJ properly evaluated Plaintiff's symptoms in accordance with the regulations and relevant case law. Defendant also asserts that the ALJ supported his conclusion by articulating how Plaintiff's medical records, medical history, and

activities of daily living were inconsistent with Plaintiff's subjective complaints. (Def.'s Mem. at 12-17.)

1. *Legal Standard for Considering Subjective Complaints.*

When evaluating a claimant's symptoms, an ALJ must follow a two-step evaluation process. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *2 (Mar. 16, 2016); 20 C.F.R. § 404.1529. The ALJ must first "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms." 2016 SSR LEXIS 4 at *3, [WL] at *2. At this step, the ALJ considers whether objective medical evidence exists to support the conclusion that an impairment exists. *Id.*

Next, at step two, after finding a medically determinable impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id*. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ is not required to find objective medical evidence to hold that a claimant is disabled because "symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." 2016 SSR LEXIS 4, at *11, 2016 WL 1119029, at *4. The claimant is not required to present objective evidence at this step. *Id.* In sum, the two-step process requires the ALJ to consider the entire case record, and he must "not disregard [a claimant's] statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. *Arakas v. Comm'r, Soc. Sec. Admin*, 983 F.3d 83, 95 (4th Cir. 2020) (alteration in original) (citations omitted). Finally, the ALJ's decision must: (1) contain specific reasons for the weight given to the individual's symptoms; and (2) be consistent with and supported by the evidence. 2016 SSR LEXIS 4, at *26, 2016 WL 1119029, at *9.

In *Arakas*, the ALJ erroneously discredited the claimant's subjective complaints by: "(1) selectively citing evidence from the record as well as misstating and mischaracterizing material facts; (2) finding the [claimant]'s complaints to be inconsistent with her daily activities; and (3) failing to consider [the] . . . unique characteristics [of the claimant's ailment] when reviewing [the claimant]'s medical records." 983 F.3d at 98. For example, the ALJ in *Arakas* misstated the claimant's testimony regarding the assistance that she gave to her sister and selectively cited medical records indicating an improvement in the claimant's condition while omitting records noting that the claimant "continued to suffer substantially with breakthrough pain" associated with fibromyalgia. *Id.* In addition, the ALJ failed to describe the extent to which the claimant could conduct her daily activities. *Id.* at 99. The Court held that reading the claimant's record, as a whole, revealed that there were no inconsistencies between her subjective complaints and the daily activities that she performed. Therefore, the Court in *Arakas* held that the ALJ's finding that her "subjective complaints were inconsistent with her daily activities" was not supported by substantial evidence, as the selective consideration of the evidence meant that the ALJ did not "build an accurate bridge from the evidence to his conclusion." *Id.*

*Woods v. Berryhill* also involved the ALJ's consideration of Plaintiff's subjective complaints, and his articulation of Plaintiff's ability to perform daily activities. 888 F.3d 686, 694 (4th Cir. 2018). In *Woods*, the claimant argued that the ALJ erred in concluding that her statements regarding the intensity, persistence and limiting effects of her symptoms were not credible. *Id.* at 694. The ALJ supported his finding by stating that the claimant's "daily activities [were] not those typically associated with an individual alleging the pain, severity, and limitations as posed by the claimant." *Id.* However, the Court found that the ALJ did not consider the claimant's statements about her limited ability to conduct her daily activities before arriving at a decision. *Id.* The Court

8

held that "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." *Id.* at 694 (quoting *Brown v. Comm'r, Social Sec. Admin.*, 873 F.3d 251, 263 (4th Cir. 2017)) (internal quotation marks omitted). On remand, the ALJ was instructed to "consider not just the *type* of [the claimant's] daily activities, but also the *extent* to which she can perform them in assessing her credibility." *Id.* at 695 (emphasis in original). Thus, *Arakas* and *Woods* stand, in part, for the proposition that an ALJ must consider and analyze a claimant's subjective claims without misstating, mischaracterizing, cherry-picking, or selectively citing evidence from the record in order to reach a conclusion.

    *2. The ALJ's Evaluation of Plaintiff's Subjective Complaints.*

  At step one of the two-step process, the ALJ found that Plaintiff's " medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision." (R. at 23.) The ALJ acknowledged Plaintiff's allegations of "musculoskeletal issues and residual pain," more specifically, "knee problems including right and left knee replacements with prosthetics causing pain and flare-ups as well as hip pain." (R. at 23.) However, the ALJ concluded, "the degree of limitation alleged is not supported in the record. . . . [Plaintiff] has some obvious limitations but not debilitating. Likewise, the medical evidence of record provides multiple unremarkable objective/physical examinations." (R. at 23.) The ALJ further explained that "imaging revealed some benign to mild clinical findings. Furthermore, the medical evidence of record reveals responsiveness to conservative treatment and medications, with improvement; and the ability to stand, walk, and move about satisfactorily without the use of a handheld assistive device." (R. at 23) (citations omitted.) The ALJ concluded that "[o]verall, [Plaintiff's] subjective symptoms do not correlate with the objective findings in the

9

medical evidence of record. Generally, the objective record, including the activities [Plaintiff] reports he engages in to healthcare providers, would support that [Plaintiff] could perform within the limitations of the residual functional capacity issued hereinabove." (R. at 23.)

The ALJ fully considered the medical record, which included Plaintiff's reports to providers about his progress after his knee surgeries. For instance, the ALJ noted that Plaintiff's provider found that he was "doing well" from a right total knee replacement standpoint, although in July 2018, Plaintiff reported to St. Mary's hospital in with complaints of "ongoing knee pain" with a "gradual onset". (R. at 20, citing R. at 361.) Plaintiff also complained of pain "when bearing weight." (R. at 20, citing R. at 361.)

Unlike the ALJs in *Arakas* and *Woods*, the ALJ did not: (1) selectively cite evidence concerning tasks which [Plaintiff] was capable of performing; and (2) improperly disregard Plaintiff's "qualifying statements regarding the limited extent to which [he] could perform daily activities." *Arakas*, 983 F.3d at 100 (citing *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006)). Instead, the ALJ addressed Plaintiff's stated limitations regarding his abilities as documented by his medical treatment notes, adult function report, and hearing testimony. As only one part of that analysis, the ALJ considered his activities of daily living. (R. at 20, 24.) A claimant's daily activities are a factor to be considered when evaluating a claimant's symptoms. 20 C.F.R. § 416.929(c)(3)(i); *Johnson v. Barnhart*, 434 F.3d at 658 (holding that a claimant's daily activities, such as performing home exercises, taking care of family pets, cooking, and doing laundry, were inconsistent with claimant's complaints of excruciating pain and inability to perform basic physical and mental work activities); *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) ("We find that the ALJ correctly applied the law in concluding that [claimant's] reported daily activities undermined her subjective complaints of chronic fatigue.").

Plaintiff alleges that the ALJ considered his daily activities without acknowledging the extent to which they were performed. (Pl.'s Mem. at 10, 12.) However, this is not a situation like *Brown v. Comm'r*, 873 F.3d 251 (4th Cir. 2017), where the ALJ overly relied upon minimal daily activities in evaluating the claimant's subjective complaints. Here, the ALJ referenced Plaintiff's daily activities as just one part of his overall evaluation of Plaintiff's subjective complaints, noting that:

> [a]lthough limited to a degree in his daily living activities as a result of his impairments, the daily activities that [Plaintiff] does perform are inconsistent with his complaints of prolonged and consistent disabling functional limitations. In fact, the record and objective medical evidence reflects [Plaintiff's] limitations mildly restrict his daily activities. Likewise, [Plaintiff] continues to perform normal activities of daily living per hearing testimony, adult function reports, and the medical evidence of record.

(R. at 23-24.)

Indeed, the ALJ relied upon other, more significant, evidence when assessing Plaintiff's subjective allegations. For instance, the ALJ summarized Plaintiff's treatment notes regarding ongoing bilateral pain, noting that his condition improved despite reports of nighttime symptoms affecting sleep. (R. at 21, citing R. at 555-56.) The ALJ noted that Plaintiff's physical examinations revealed "no left knee deformities, full extension/flexion, appropriate patellofemoral tracking and full extensor mechanism, no instability, and intact sensation and neurovascular. He was also reported as doing well overall." (R. at 21, citing R. at 555-56.) At a follow-up appointment, Plaintiff was reportedly happy with his right knee replacement and "doing quite well" although he still experienced a deficit in strength and extension due to some swelling and partial effusion of the knee. (R. at 21, citing R. at 555-56.) The ALJ noted that his physical examination revealed "no obvious deformities, a well-healed incision without complication, no stability concerns, good extensor strength, and intact sensation and neurovascular." (R. at 21.)

11

The ALJ acknowledged that Plaintiff presented at an April 2019 appointment with complaints of ongoing left knee pain, but "no instability or falls and being happy with his right total knee replacement." (R. at 21, citing R. at 813, 815-16.) Physical examinations revealed mild left patellofemoral joint irritability, tenderness, decreased range of motion, and slightly antalgic gait, but well-healed surgical scars, no deformities or effusion, stability 5/5 strength, and normal neurologic and right patellofemoral joint." (R. at 21, citing to R. at 813, 815-16.) Imaging at the time showed small left knee joint effusion and postsurgical changes, but "anatomic alignment and no evidence of acute hardware complication, failure, fracture, or dislocation." (R. at 21, citing to R. at 825-27.) The ALJ continued to summarize Plaintiff's treatment, noting that in August 2019, Plaintiff reported continued complaints of knee pain, although "a physical examination remained virtually unremarkable revealing chronic knee pain, but a well-nourished appearance, no edema, and normal neurologic, reflexes, sensory, muscle tone, and coordination." (R. at 21, citing R. at 663-64.) The ALJ mentioned that at a follow-up appointment on September 9, 2019, Plaintiff's physical examinations were once again "unremarkable" although an objective examination on September 12, 2019 "revealed an antalgic gait, but no assistive device." (R. at 21, citing R. at 657-61.) Nonetheless, the ALJ noted that Plaintiff was reportedly "progressing well" at physical therapy on September 23, 2019, and that he was able to complete all activities on September 30, 2019, despite "complaints of continued bone pain in the knees." (R. at 21, citing R. at 655-56.)

In February 2020, Plaintiff reported pain and impaired mobility, and a physical examination revealed "bilateral pain and tenderness of the knees (left more than right) with decreased range of motion, impaired mobility, and abnormal gait, but no acute distress, no swelling or edema, and normal appearance, reflexes, neurologic, sensory, motor strength, and coordination." (R. at 21-22, citing R. at 777-78, 780-782.) However, in May 2020, "progress notes

12

reported [Plaintiff's] chronic knee pain due to osteoarthritis was stable. An objective/physical examination was virtually unremarkable revealing no acute distress, no lower extremity swelling or edema, and normal appearance, musculoskeletal range of motion, and neurologic." (R. at 22, citing R. at 798, 801-802.) The ALJ noted that Plaintiff was "prescribed medications and his medication management was continued." (R. at 22.)

The ALJ also considered the medical opinion evidence. He found the opinion of a consultative examiner, Nancy Powell, M.D. ("Dr. Powell"), to be "partially persuasive" and summarized her findings regarding Plaintiff's physical limitations and conclusion that he could perform a light range of work. (R. at 22.) The ALJ also summarized and found the medical consultants' opinions "somewhat persuasive and supportive to the extent of some of their postural limitations as well as recognizing [Plaintiff's] ability to perform light exertional work like activities as documented in their summaries." (R. at 23.) In doing so, the ALJ appropriately: (1) assessed the medical opinion evidence in accordance with the regulations; and (2) considered their assessments when evaluating Plaintiff's subjective complaints.

Plaintiff contends that the ALJ's "rejection of his subjective complaints was premised upon the ALJ's improper characterization of Plaintiff's activities." (Pl.'s Reply Mem. at 2 (ECF No. 30).) However, the undersigned finds that the ALJ's characterizations are supported by substantial evidence. Upon review of the record, the ALJ's opinion was thorough and applied the proper legal standard. *See Ladda v. Berryhill*, 749 Fed. App'x. 166 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility determination because the ALJ explained his reasoning and weighed the claimant's subjective statements against other evidence.) To the extent that Plaintiff contends that "[n]othing about Plaintiff's daily activities is inconsistent with Plaintiff's subjective reports regarding his limitations" and that "not a single activity cited by the ALJ conflicts with Plaintiff's

13

inability to stand/walk due to his knee pain," this appears to be an invitation to re-weigh evidence that has already been considered and weighed by the ALJ. It is well established that this Court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d, 585, 589 (4th Cir. 1996.) Accordingly, the undersigned finds that the ALJ did not err in his evaluation of Plaintiff's subjective complaints, and substantial evidence supports his findings.

### B. The ALJ Did Not Err by Omitting a Cane from the Residual Functional Capacity Assessment.

Plaintiff's second argument in support of summary judgment is that the ALJ failed to properly evaluate the medical necessity of Plaintiff's cane use. (Pl.'s Mem. at 15-17.) In response, Defendant asserts that: (1) the ALJ needed only to consider "medically required" assistive walking devices when making the residual functional capacity assessment; and (2) the ALJ's thorough explanation for omitting the use of a cane from the residual functional capacity assessment provided the logical bridge between the evidence and his conclusion. (Def.'s Mem. at 17-20.)

*1. Legal Standard.*

When formulating an assessment of residual functional capacity, an ALJ must "consider the impact of 'medically required' hand-held assistive devices." *Fletcher v. Colvin*, No. 1:14CV380, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015) (citing SSR 96–9p, 1996 WL 374185 (July 2, 1996)). For instance, use of a hand-held assistive device, such as a cane or walker, may limit a claimant's residual functional capacity "by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4). However, only devices that are "medically required" need

14

to be considered by the ALJ when making the residual functional capacity assessment. *Fletcher*, 2015 WL 4506699, at *8 (*quoting* SSR 96-9p, 1996 WL 374185 (July 2, 1996)).

For an assistive device to be "medically required," the claimant must present medical documentation: (1) supporting his need for an assistive walking device; and (2) describing the circumstances that require it. SSR 96–9p, 1996 WL 374185, at *7. Neither a prescription for a cane, nor the lack thereof, necessarily determines whether the claimant medically requires an assistive device. *Fletcher*, 2015 WL 4506699, at *8 (citing *Staples v. Astrue*, 329 F. App'x 189, 191-92 (10th Cir. 2009)). If the claimant fails to supply appropriate documentation, the ALJ need not include the use of an assistive walking device in the residual functional capacity assessment. *Fletcher*, 2015 WL 4506699, at *8.

2. *The ALJ's Consideration of Plaintiff's Cane Use.*

Upon review of the ALJ's decision, it is apparent that he carefully considered Plaintiff's use of a handheld assistive device in his decision. (R. at 20-23.) Specifically, the ALJ noted that Plaintiff testified that he used a non-prescribed cane daily, that medical reports suggesting that he used it only occasionally were not accurate, and that his doctor told him to continue using it. (R. at 20, citing R. at 42-44.) The ALJ considered the medical records that referred to his use of a cane. (R. at 21, citing R. at 647 (June 2019 treatment note describing a cane "some of the time")); R. at 648 (observation of left hand cane use upon examination during June 2019); R. at 657 (ambulating during a September 2019 physical therapy session, but reporting that he used a cane "once in a while"); R. at 777 (reporting to his primary care physician that he used a cane "to assist with ambulation" and has "problems with bending, prolonged sitting, standing, and walking.").) The ALJ noted that the medical record "reveals responsiveness to conservative treatment and

15

medications, with improvement; and the ability to stand, walk and move about satisfactorily without the use of a handheld assistive device." (R. at 23.) The ALJ continued:

> [Plaintiff] testified he uses a cane daily, but physical therapy notes reported that he stated using a cane "once in a while . . . when he knows he will be out during the day a lot." Yet, in September 2019, [Plaintiff] had an antalgic gait, but he presented ambulating with no assistive device that day. Additionally, there are physical therapy records from close in time to the total knee replacement wherein [Plaintiff] does require the use of an assistive device, but such was within 12 months of the total knee replacement and [Plaintiff] no longer needed an assistive device thereafter.

(R. at 23) (citations omitted.)

In addition to Plaintiff's testimony and his treatment notes, the ALJ considered the medical opinion evidence regarding Plaintiff's continued use of a cane. (R. at 22-23.) The ALJ found the medical opinion of Dr. Powell to be partially persuasive "only to the extent her clinical findings and examination support light exertional limitations." (R. at 22.) The ALJ summarized Dr. Powell's findings, including her opinion that Plaintiff needed to use a cane "some of the time," but concluded that:

> [T]his opinion is mainly based on [Plaintiff's] subjective complaints and otherwise overly restrictive and an overstatement of the evidence regarding cane usage. Specifically, the medical evidence of record has nearly no mention of the use of an assistive device (see in particular Exhibit 5F5 in September 2019, which reflects an antalgic gait, but he presented ambulating with no assistive device that day).

(R. at 22.)

The ALJ also evaluated the state agency medical consultants' opinions, which assessed Plaintiff with the ability to perform light work with some frequent and occasional postural limitations. (R. at 22-23.) Notably, neither medical consultant contended that Plaintiff required a cane to ambulate. (R. at 22-23.) The ALJ found their opinions to be "somewhat persuasive and

16

supportive to the extent of some of their postural limitations as well as recognizing [Plaintiff's] ability to perform light exertional work like activities as documented in their summaries." (R. at 23.) Nonetheless, the ALJ found that more postural and environmental limitations were warranted "due to [Plaintiff's] ongoing musculoskeletal issues and residual pain." (R. at 23.)

Further, the ALJ considered Plaintiff's ability to perform activities of daily living as inconsistent with his need for a cane to ambulate. (R. at 23-24.) For example, during a visit to OrthoVirginia on October 2, 2018, it was noted that Plaintiff was "doing better overall in regard to general activity level with no instability, swelling, numbness, tingling, or radiating symptoms status post left total knee replacement[.]" (R. at 24, citing R. at 555). The ALJ noted that during Plaintiff's consultative examination on June 25, 2019, he told Dr. Powell that his activities of daily living included doing physical therapy exercises and driving. (R. at 24, citing R. at 647.) The ALJ also cited to Plaintiff's adult function report, which included activities of daily living such as "helping take care of his 18-year-old daughter, performing independent personal care, stretching/exercising, reading, writing, paying bills, shopping by computer, driving, and talking on the phone and visiting with his daughter and mother." (R. at 24, citing R. at 284-291, 304-311.) Plaintiff also testified to bathing, dressing, doing physical exercises, and preparing simple food which the ALJ concluded were "activities inconsistent with disability." (R. at 24.)

In crafting the residual functional capacity assessment, the ALJ noted the absence of a medical opinion recommending Plaintiff's continued use of a cane. (R. at 22, ("Specifically, the medical evidence of record has nearly no mention of the use of an assistive device.").) In this case, there is no indication in the record that Plaintiff presented medical documentation prescribing a cane. Moreover, "self-reports and references in the record from physicians that a claimant presented with an assistive device are not sufficient; there must be an unambiguous opinion from

17

a physician stating the circumstances in which an assistive device is medically necessary." *Williams v. Berryhill*, No. 3:18CV669 (REP), 2019 WL 2939258, at *13 (E.D. Va. June 17, 2019), *report and recommendation adopted sub nom.*, *Williams v. Saul*, No. 3:18cv669, 2019, WL 2931936 (E.D. Va. July 8, 2019).

Plaintiff argues that the ALJ "did not conduct any analysis of Plaintiff's cane use, let alone a proper one. He did not address whether or not there was a medical basis for Plaintiff's cane use – and clearly, there was one." (Pl.'s Mem. at 17.) However, a review of the record and the ALJ's decision confirms that the ALJ provided a narrative discussion on whether the assistive device was medically necessary, and in doing so, the ALJ built a logical bridge between the evidence and his conclusion. This Court finds that: (1) the ALJ did not err in concluding that Plaintiff failed to meet his burden of showing that a cane was "medically required" for balance as set forth in SSR 96-9p; and (2) substantial evidence supports the ALJ's determination not to account for an assistive device in the residual functional capacity assessment.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 27) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 29) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge David J. Novak.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

        /s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: <u>July 20, 2022</u>